# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| MELINDA MODERSON and LYNSEY SYDMARK, | |
| Plaintiffs, | Case No. 21-CV-504-JPS |
| v. | |
| MFK MOBILELINK WISCONSIN, LLC and MOBILELINK MICHIGAN LLC, | **ORDER** |
| Defendants. | |

This case comes before the Court on Defendant Mobilelink Michigan, LLC's ("Mobilelink Michigan") motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2). ECF No. 26. Also before the Court is Plaintiff Lynsey Sydmark's ("Sydmark") motion to change venue of her claims against Mobilelink Michigan, solely as an alternative to dismissal. ECF No. 43. For the reasons stated herein, the Court will deny Mobilelink Michigan's motion to dismiss and accordingly will deny as moot Sydmark's motion to change venue solely as an alternative to dismissal.

## 1.    BACKGROUND

### 1.1    Procedural Background

Originally, this action was brought solely against MFK Mobilelink Wisconsin, LLC ("Mobilelink Wisconsin"). ECF No. 1. An amended complaint added Sydmark and her claims against previously-unnamed Mobilelink Michigan on September 12, 2021. ECF No. 15. It is that addition which forms the basis of the motions now before the Court.

While Mobilelink Wisconsin answered the amended complaint, ECF No. 16, Mobilelink Michigan instead moved to dismiss the amended complaint against it for lack of personal jurisdiction. ECF No. 19. On November 24, 2021, the Court denied Mobilelink Michigan's motion without prejudice and ordered the parties to meet and confer and draft a single, agreed-upon statement of material facts before filing any subsequent dispositive motions. ECF No. 22. The parties complied by meeting and conferring but were unable to come to a resolution on Mobilelink Michigan's contemplated motion to dismiss. ECF No. 25. Mobilelink Michigan thereafter filed a renewed motion to dismiss for lack of personal jurisdiction. ECF No. 26. That motion is now before the Court.

On May 3, 2022, Plaintiffs filed a motion requesting time to conduct jurisdictional discovery in order to properly respond to Mobilelink Michigan's motion. ECF No. 42. The Court granted that motion, and the parties conducted additional discovery, during which time Mobilelink Michigan's renewed motion to dismiss, ECF No. 26, was stayed. The Court furthermore granted the parties leave to file supplemental briefing. ECF No. 41. Sydmark thereafter filed a motion to change venue of her claims against Mobilelink Michigan, solely as an alternative to dismissal. ECF No. 43. That motion is also before the Court.

Mobilelink Michigan additionally filed the requested agreed-upon statement of material facts, as well as its own statement of additional facts in support of its motion to dismiss. ECF Nos. 30, 31. Also relevant to the motions at issue are various declarations, deposition transcripts, and answers to interrogatories. ECF Nos. 39, 45, 46, 47.

### 1.2    Factual Background

All of the claims against Mobilelink Michigan are brought by Sydmark, an employee of Mobilelink Michigan, on behalf of herself and all other hourly-paid, non-exempt employees of Mobilelink Michigan. ECF No. 30. In the amended complaint, Sydmark seeks relief under federal and Michigan law for unpaid overtime compensation. ECF No. 15. She alleges specifically that Mobilelink Michigan operated, and continues to operate, an unlawful compensation system that deprived Sydmark and all other hourly-paid, non-exempt employees of their wages earned for all compensable work performed each workweek. *Id*. at 2.

An entity called MFK, LLC, ("MFK") employs the executive management and corporate staff, and serves as the home office, for all Mobilelink entities operating in various states, including Mobilelink Michigan and Mobilelink Wisconsin. ECF Nos. 29 at 2, 47-1 at 37. MFK establishes the corporate policies that all Mobilelink entities are expected to follow, and its corporate and executive staff supervise and serve the "state-level Mobilelink entities." ECF No. 29 at 1, 2. MFK also provides payroll and human resources services to the Mobilelink entities. *Id*. at 1.

MFK's managing member is Furqan Khan ("Khan"), who is also the managing member of "each of Mobilelink's affiliated limited liability companies." ECF No. 47 at 2. There are approximately "49 [or] 50" such affiliate LLCs under the Mobilelink umbrella, all of which are owned in part and managed by Khan. ECF No. 47-1 at 35–36. Each of these Mobilelink affiliate LLCs are ostensibly "separate corporate entities." ECF No. 31 at 2.

It is undisputed that Mobilelink Michigan operates Cricket Wireless stores in the State of Michigan, including the store in Iron Mountain, Michigan, where Sydmark works as a Retail Store Manager. ECF No. 30, 46.

Sydmark began her employment with Mobilelink Michigan on September 24, 2019. ECF No. 46.

Also relevant to the personal jurisdiction dispute is Jody Jordens ("Jordens"), a former Territory Manager for Mobilelink Wisconsin. ECF No. 45. Jordens worked for Mobilelink Wisconsin as a Territory Manager from November 16, 2018 to September 30, 2021. *Id*. At all times during her employment, Jordens was a resident of Wisconsin and performed much of her work therefrom. *Id*. Jordens, as Territory Manager for the Wisconsin Territory, reported directly to Dwayne Carter ("Carter"), an employee of Mobilelink Wisconsin who held the position of Sales Director. *Id*. at 2. Territory Managers, such as Jordens, and Sales Directors, such as Carter, are employed by MFK. *Id*.

Although the store at which Sydmark is employed, and which Jordens oversaw as Territory Manager, is located physically in the state of Michigan, it is part of the "Wisconsin Territory." ECF Nos. 46, 47-1 at 44; *see also* ECF No. 47-2 ("Defendant did operate a few stores in Michigan near the Wisconsin Border."). Mobilelink Michigan does not itself operate any stores within the state of Wisconsin, nor do any of its employees work physically in Wisconsin. ECF No. 31 at 2, 3. Nevertheless, it has various stores located within the state of Michigan which are part of the Wisconsin Territory.

As the Territory Manager for the Wisconsin Territory, Jordens managed "approximately four (4) retail stores in Wisconsin under the MFK Mobilelink Wisconsin, LLC entity and four (4) retail stores in Michigan under the Mobilelink Michigan, LLC entity." ECF No. 45 at 2. There is "no distinction in any of the policies, procedures, or actual practices between the retail stores in Wisconsin and those in Michigan." *Id*. According to the

Executive Director of MFK, "Mobilelink Michigan, LLC had no role in the decision to have the store managers in the Upper Peninsula of Michigan report to the Northern Wisconsin Territory manager. That decision was made by MFK, LLC." ECF No. 29 at 3.

Sydmark, as the Retail Store Manager of the Iron Mountain, Michigan store, reported directly to Jordens, who was her direct supervisor. ECF No. 46. Sydmark's job duties at that store included overseeing social media marketing. *Id*. at 2. Because of the proximity of Iron Mountain, Michigan to the state of Wisconsin, Sydmark commonly advertised "sales and promotions to those areas by . . . targeted digital advertising." *Id*. Because sales and promotions for Mobilelink Michigan created by Sydmark were intended to reach "both Michigan and Wisconsin residents," Sydmark was instructed to include disclaimers indicating that Wisconsin residents were not eligible for certain promotions that would violate Wisconsin law. *Id*. Sydmark estimates that "20% of the customers of Mobilelink Michigan's Iron Mountain retail store location are Wisconsin residents." *Id*.

Jordens, as Territory Manager overseeing stores including the Iron Mountain, Michigan location, regularly performed "formal training of all retail store employees . . . in order to assure employees' compliance with all corporatewide policies such as timekeeping, attendance, overtime, and sales techniques." ECF No. 45 at 2. Sydmark affirms that "[f]or any employee complaints regarding payroll, commission, overtime compensation, or the like, [she] refer[s] employees to Ms. Jordens for resolution of those issues." ECF No. 46 at 2.

Jordens performed these tasks not only with respect to Sydmark and the Iron Mountain, Michigan store, but also "with respect to all store employees in my territory including employees at Mobilelink Michigan,

LLC retail stores while physically located in Wisconsin." ECF No. 45 at 2. Jordens was required to assure that all employees in the Wisconsin Territory, "including employees at Mobilelink Michigan, LLC retail store locations . . ., complied with Mobilelink's uniform policies, procedures and actual practices with respect to timekeeping, attendance, and overtime." *Id*. at 3. This required Jordens to review the timekeeping records of employees within the Wisconsin Territory, including those at Mobilelink Michigan stores within that territory. *Id*. at 4. Jordens was "frequently required to determine the reason for timekeeping errors by Mobilelink Michigan, LLC's hourly-paid, non-exempt employees including [] Sydmark, by discussing matters directly with said employees . . . while [Jordens] was physically located in Wisconsin." *Id*. Overtime was a matter of particular concern with upper management, and so Jordens was required to routinely monitor and discourage the use of overtime hours. *Id*.; ECF No. 47-1 at 106 (describing email from Carter to Jordens about how overtime is a big problem within the company and needs to be avoided).

      In addition to performing those tasks and oversight, Jordens was also in "routine, daily communication with Retail Store Managers as well as hourly-paid, non-exempt retail store employees including those at the Mobilelink Michigan, LLC store locations in Michigan via text message communication, telephone communication, WhatsApp messaging, and e-mail regarding employment related matters including timekeeping, attendance, overtime, leave, commissions, and payroll." *Id*. at 3. Much of these communications between Jordens and the stores she oversaw occurred while Jordens was physically located in Wisconsin. *Id*. Sydmark participated in daily calls with Jordens to discuss day-to-day store activities, and she was additionally in daily communication with Jordens

through text messaging, WhatsApp messaging, and e-mail. ECF No. 46 at 2.

Jordens was also directed by her Sales Director, Carter (also an employee of Mobilelink Wisconsin), to "regularly and routinely visit Mobilelink Michigan retail store locations" and she "did so multiple times each month." ECF No. 45 at 3. Territory Managers are generally expected to visit "at least two stores [within their designated territory] a day." ECF No. 47-1 at 49. Apart from those visits to the Michigan retail stores within the Wisconsin Territory, the majority of Jordens' working time was spent in Wisconsin. ECF No. 45 at 3.

## 2. LEGAL STANDARD

Under Rule 12(b)(2), a party may move to dismiss on the ground that the court lacks jurisdiction over it. Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing personal jurisdiction when the defendant contests it. *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). However, in cases such as this one, where the matter is decided on a motion to dismiss and without an evidentiary hearing, a plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id*. (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Moreover, "[p]ersonal jurisdiction must be established separately with respect to each claim and each defendant." *Jefferson Elec., Inc. v. Torres*, No. 09-C-465, 2009 WL 4884379, at *1 (E.D. Wis. Dec. 10, 2009).

Unlike some other challenges to a plaintiff's complaint, when questions of personal jurisdiction arise, a court may consider affidavits and other evidence outside of the pleadings. *Purdue Rsch. Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The court will "accept as true all well-pleaded facts alleged in the complaint and resolve any factual

disputes in the affidavits in favor of the plaintiff." *Purdue Rsch. Found.*, 338 F.3d at 782; *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012).

Dismissal here is sought on the basis of an alleged lack of personal jurisdiction over Defendant Mobilelink Michigan. In a federal-question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chic., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (citation omitted).

### 3. THE PARTIES' ARGUMENTS

Mobilelink Michigan emphasizes that Mobilelink Michigan and Mobilelink Wisconsin are "separate corporate entities, each with their own operations and their own employees in their own respective states." ECF No. 27 at 4. Mobilelink Michigan asserts that it "has no physical presence in Wisconsin, does no business there, and directs no advertising to residents of Wisconsin." *Id*. The only connection to Wisconsin, Mobilelink Michigan contends, is the location of a "single low-level manager whose Northern Wisconsin territory included four Michigan Mobilelink stores in the Upper Peninsula . . . ." *Id*.

Mobilelink Michigan argues that this connection is insufficient for purposes of specific personal jurisdiction because the location of the territory manager (Jordens) over the Upper Peninsula stores was not Mobilelink Michigan's choice. *Id*. at 5. Instead, Mobilelink Michigan claims, that connection was established by MFK, a separate corporate entity. *Id*. In other words, it argues, Mobilelink Michigan did not itself direct any action to the state of Wisconsin.

Sydmark opposes the motion. Sydmark begins by emphasizing the Court's language in its April 20, 2022, order. ECF No. 41 ("[I]f discovery reveals that Jordens maintained managerial oversight and direction of Mobilelink Michigan's hourly-paid, non-exempt store employees (including Sydmark) regarding timekeeping, payroll, non-discretionary bonus plans, and overtime compensation, this Court may have specific jurisdiction over Mobilelink Michigan as to the claims in this case."). Discovery has revealed just that, Sydmark argues.

Sydmark disputes Mobilelink Michigan's claim that Mobilelink Michigan directs no advertising to Wisconsin, and refers the Court to her declaration, ECF No. 46, where she attests to directing targeted digital advertising from her retail location in Iron Mountain, Michigan to Wisconsin. ECF No. 44 at 5. This evidences an intentional direction of Mobilelink Michigan's activities to the state of Wisconsin, Sydmark argues. *Id*. at 10.

Specific personal jurisdiction is also present, Sydmark maintains, because "Defendant [Mobilelink Michigan] purposefully availed itself to Wisconsin by conducting business in Wisconsin and directing its activities at Wisconsin by assigning management responsibilities to Jordens[,] Carter, an [sic] others—residents of Wisconsin and employees of MFK Mobilelink Wisconsin, LLC." *Id*. at 10. Sydmark asserts that the substantial amount of telephone, email, WhatsApp, and in-person communication directed from Sydmark (and the Iron Mountain, Michigan store generally) to Jordens in Wisconsin, and vice versa, also constitutes minimum contacts with Wisconsin for purposes of specific jurisdiction. Sydmark asserts that under an agency theory, the suit-related contacts undertaken by Mobilelink Michigan's agents are imputed upon Mobilelink Michigan itself. *Id*. at 13.

Finally, in the event that the Court grants Mobilelink Michigan's motion to dismiss for lack of personal jurisdiction, Sydmark alternatively requests that the Court transfer the case to the United States District Court for the Western District of Michigan. ECF No. 44 at 2.

**4.     LAW & ANALYSIS**

In a federal-question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chic.*, 623 F.3d at 433 (citation omitted). The federal statute under which Sydmark sues (the Fair Labor Standards Act) does not allow for nationwide service of process. *See, e.g., Parker v. IAS Logistics DFW, LLC*, No. 20 C 5103, 2021 U.S. Dist. LEXIS 171095, at *2 (N.D. Ill. Sep. 9, 2021). Thus, personal jurisdiction exists only if (1) Wisconsin law authorizes service of process on a defendant in Michigan and (2) such service comports with due process. *See Glob. Imaging Acquisitions Grp., LLC v. Rubenstein*, 107 F. Supp. 3d 961, 963 (E.D. Wis. 2015). But since the "Wisconsin long-arm statute, governing service of process, has been interpreted to confer jurisdiction to the limits of due process," these two inquiries often collapse into one, allowing the Court to "focus only on whether due process authorizes personal jurisdiction and . . . not perform a separate inquiry under the long-arm statute." *Id*. at 963–64 (citation omitted). In other words, "because Wisconsin presumes its long-arm statute merely codifies the federal due process requirements, . . . the burden switches to [the defendant] to show that jurisdiction would nevertheless violate due process." *Logan Prods. v. Optibase, Inc*., 103 F.3d 49, 52 (7th Cir. 1996) (citations omitted).

Due Process prohibits a state from binding a nonresident defendant to a judgment of its courts unless the nonresident has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" consistent with the Due Process Clause of the Fourteenth Amendment. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Those traditional notions of farness mean that a defendant may not be forced to appear in a district court unless it has done something to make it "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 474 (1985) (citation omitted).

There are two ways in which a nonresident defendant might reasonably anticipate being haled into an out-of-state court, which courts have labeled specific and general jurisdiction. In specific jurisdiction, the defendant must have "purposefully directed" his activities at the forum state, and the alleged injury must arise from those forum-directed activities. *Id*. at 472. The parties agree, and the Court has already noted, that general jurisdiction cannot be faithfully argued here, and only specific jurisdiction is at issue. ECF Nos. 41 at 7, 44 at 9. The Court will therefore omit further discussion and analysis relating to general personal jurisdiction.

When the Court is proceeding under specific personal jurisdiction, the standard for determining whether such jurisdiction comports with due process "may be condensed to three essential requirements:"

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland*, 682 F.3d at 673 (internal citations omitted).

"[M]erely because a plaintiff's cause of action arose out of the general relationship between the parties [is not enough]; rather, the action must *directly arise* out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995)). In other words, "[s]pecific jurisdiction must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014).

As the Court noted in its April 20, 2022 order, ECF No. 41, "[i]f it is true that wage-and-hour decisions were the prerogative solely of MFK and were effectuated as to Michigan employees solely by Mobilelink Michigan, then this Court cannot maintain jurisdiction." The additional discovery undertaken by the parties pursuant to the Court's order shows that this was not the case. Instead, discovery has revealed that "Jordens maintained managerial oversight and direction of Mobilelink Michigan's hourly-paid, non-exempt store employees (including Sydmark) regarding timekeeping, payroll, non-discretionary bonus plans, and overtime compensation" resulting in "this Court [having] specific jurisdiction over Mobilelink Michigan as to the claims in this case." ECF No. 44 at 14 (quoting ECF No. 41).

First, Sydmark has shown that she and other employees at the Iron Mountain, Michigan retail store owned by Mobilelink Michigan engaged in daily communication with Jordens, while Jordens was employed by Mobilelink Wisconsin and was physically present in Wisconsin. The subject of those daily communications regularly involved the topics of compensation and overtime, which relate to the claims of this action.

Second, Sydmark has also shown that she, on behalf of Mobilelink Michigan, intentionally directed advertising for Mobilelink Michigan's Iron Mountain, Michigan retail location to cities in Wisconsin in order to promote the store's sales to Wisconsin residents near the Upper Peninsula. Mobilelink Michigan claims that it directs no advertisement to Wisconsin, but the Court is required at this stage to resolve factual disputes in favor of Sydmark, and Sydmark has stated unequivocally that she was instructed to direct advertisement to reach Wisconsin through targeted digital advertising. *Felland,* 682 F.3d at 672.

There is a fundamental problem with Sydmark's second showing regarding directed advertising, however, and that problem is that it is not clear that the advertisement contacts with Wisconsin are at all related to the lawsuit. Mobilelink Michigan's argument that these alleged advertising contacts cannot form the basis for personal jurisdiction here because they have "no bearing on the issue of how overtime pay rates were calculated" is correct. ECF No. 48 at 8. As mentioned previously, "[s]pecific jurisdiction must rest on the litigation-specific conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance Sys.,* 951 F.3d at 801. The advertisements directed at Wisconsin residents near the border of the Upper Peninsula do not relate to Mobilelink Michigan's allegedly unlawful compensation system or the alleged unlawful deprivation of overtime pay. As such, the direction of advertisements to Wisconsin cannot serve as proper minimum contacts, and the Court must ignore them for purposes of this analysis.

The critical question is therefore whether the communication contacts with Jordens as raised in Sydmark's first showing constitute minimum contacts. If so, the next question is whether exercising personal

jurisdiction over Mobilelink Michigan based on those minimum contacts comports with due process.

The communications here at issue were made by phone, email, text, WhatsApp messaging, and in-person. The United States Supreme Court, in acknowledging the substantial amount of business transacted "solely by mail and wire communications across state lines," has stated that personal jurisdiction cannot be defeated merely because a defendant did not "physically enter" the forum state. *Burger King*, 471 U.S. at 475. In other words, a defendant can be subject to adjudication in the court of a state in which it does no physical business and has no physical presence if there exist sufficient other non-physical contacts with the state. Mobilelink Michigan's arguments that it maintains no physical presence in Wisconsin and conducts no business there will not carry the day.

Furthermore, it is critical to emphasize that Sydmark undertook these communications with Jordens not unilaterally nor in her capacity as a random third-party, but rather pursuant to her official duties as Retail Store Manager for the Iron Mountain, Michigan retail store. Sydmark's actions as Retail Store Manager for one of Mobilelink Michigan's stores can be imputed to Mobilelink Michigan. "For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001); *see also New Process Steel, L.P. v. Ph Gr, Inc.*, 107 Fed. Appx. 641, 642 (7th Cir. 2004) ("Thus, if New Process can show that PH Group was acting as St. Lawrence's agent in the sale, then the contacts of PH with Illinois can be used to establish personal jurisdiction over St. Lawrence."); *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 590 (7th Cir. 2021) ("[W]e have never explicitly held the attribution of an agent's conduct to a

principal to establish specific personal jurisdiction comports with federal due process. We hold now that it does, joining other circuits that have recognized the same.").

There is no question that in directing compensation- and overtime-related communications to Jordens and in sending her employees to Jordens with inquiries on those topics, Sydmark was acting pursuant to implied actual authority as an agent for Mobilelink Michigan. Implied actual authority is that which is "inferred from the words used, the customs, the nature of the authorization, or the relations of the parties." *Kinesoft Dev. Corp. v. Softbank Holdings Inc.*, 139 F. Supp. 2d 869, 899 (N.D. Ill. Feb. 16, 2001). Furthermore, "[i]rrespective of whether agency is founded on express or implied actual authority, an agent's knowledge may be imputed to the principal." *Select Creations v. Paliafito Am.*, 830 F. Supp. 1223, 1234 (E.D. Wis. Aug. 13, 1993). The communications here were made within the scope of Sydmark's role as Retail Store Manager to effectuate management of the store. The actions and communications taken by Sydmark to Jordens as Retail Store Manager can therefore be understood as contacts by Mobilelink Michigan itself.

Communications alone, such as those attested to in this case, can in some circumstances constitute minimum contacts. In *Exhibit Icons, LLC v. XP Cos., LLC*, the court held that purposefully directed communications and negotiations by the defendant via "telephone, email and facsimile to Florida," including 188 telephone calls, established the necessary minimum contacts for specific personal jurisdiction over the defendant. 609 F. Supp. 2d 1281, 1292–93 (S.D. Fla. Mar. 26, 2009).

Similarly, the court in *National Technology, Inc. v. RepCentric Solutions* found specific personal jurisdiction based on a "network . . . intimately

linked to NTI's operations in Illinois and its development [requiring] regular communications between [plaintiff and defendant]. Even when [defendant's] employees . . . were not in Illinois, they would have to coordinate personnel activities via many phone calls and emails to NTI's personnel in Illinois." No. 13-C-1819, 2013 U.S. Dist. LEXIS 9881, at *11 (N.D. Ill. July 16, 2013). The court there noted that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Nat'l Tech.*, U.S. Dist. LEXIS 9881, at *11.

Generally, no specific jurisdiction can exist by virtue of non-substantial communications purposefully directed to the forum state, such as a single phone call placed thereto. *Future Tech Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000). Even this is not unequivocally true, however. "In proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (quoting *Burger King*, 471 U.S. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum even a single act can support jurisdiction.")). In other words, specific personal jurisdiction can exist based on even only a mere few instances of communication directed to the forum state where the communication(s) relate to the subject matter of the action and demonstrate(s) a purposeful invocation of the benefits and protections of the forum state. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("[O]rdinarily, 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'").

Here, Mobilelink Michigan, through its agent Retail Store Manager Sydmark, made regular communications with Jordens, an employee of

Mobilelink Wisconsin located and working in Wisconsin, regarding compensation, overtime, and similar topics at issue in this lawsuit. This is not a situation in which there was only one or a few isolated incidences of communication directed by Mobilelink Michigan and its employees to Wisconsin. Instead, the record shows an established, regular, and consistent practice of deliberate communication between Mobilelink Michigan and its employees, including Sydmark, to Wisconsin (specifically, to the Territory Manager of that region, here Jordens). Jordens, as Retail Store Manager, partook in daily calls with Jordens while Jordens oversaw the Wisconsin Territory from Wisconsin. The requirement of minimum contacts in the forum state is therefore met.

As mentioned previously, Mobilelink Michigan argues that this connection between Sydmark as Retail Store Manager for the Iron Mountain, Michigan retail store and Jordens as the Wisconsin Territory Manager is insufficient for purposes of specific personal jurisdiction because this hierarchical corporate structure was not decided by Mobilelink Michigan. That connection, Mobilelink Michigan argues, was established by MFK, a separate corporate entity which neither "owns, operates, or controls" another. ECF No. 40 at 4. "Sydmark . . . does not offer any evidence that it was Mobilelink Michigan rather than Jordens, Jordens' employer, or MFK, LLC who required this 'constant communication,'" Mobilelink claims. ECF No. 48 at 7. In other words, it argues, Mobilelink Michigan did not itself voluntarily direct any action to the state of Wisconsin.

But "the constitutionality of jurisdiction does not turn on which party 'started it.'" *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). And while the Court does not find it necessary to substantively

discuss alter ego liability[1] for purposes of deciding this motion, the Court is skeptical of Mobilelink Michigan's repeated assertions on this issue. As described previously, Khan is the managing member of all the Mobilelink LLC entities, as well as the managing member of MFK, the ostensibly "separate entity" that exists to set the corporate policy for all the Mobilelink LLC entities, to oversee their operations, to handle their payroll, and to provide their human resources services. Despite Mobilelink Michigan's protestations to the contrary, this structure reeks of the exploitation of corporate formalities for the purpose of avoiding personal jurisdiction. All the entities here are owned (at least in part) by the same person, managed by that same person, and exist to further the same business (profitable operation of Cricket Wireless stores).

The Court's inquiry does not end at the finding of minimum contacts, however. The Court must also analyze due process requirements, and where a plaintiff has made out a prima facie case of specific jurisdiction, "the burden switches to [the defendant] to show that jurisdiction would nonetheless violate due process." *Logan Prods.*, 103 F.3d at 52 (internal citation omitted). Mobilelink Michigan asserts that "Sydmark has not shown that jurisdiction over Mobilelink Michigan would be reasonable in light of traditional notions of fair play and substantial justice," ECF No. 48 at 9, but this assertion reflects a reversal of the applicable burden at this point. *See Logan Prods.*, 103 F.3d at 53 ("Once minimum contacts have been established, [the defendant] can only escape jurisdiction by making a

---

[1] "[W]here a defendant has treated a business entity as an alter ego, the court may treat the defendant and the entity as one and the same for jurisdictional purposes." *Rual Trade Ltd. v. Viva Trade LLC*, 549 F. Supp. 2d 1067, 1076 (E.D. Wis. Apr. 28, 2008) (citations omitted).

Case 2:21-cv-00504-JPS   Filed 09/22/22   Page 18 of 26   Document 51

'compelling case' that forcing it to litigate in Wisconsin would violate traditional notions of fair play and substantial justice."). It is Mobilelink Michigan's task to make a compelling case that the exercise of jurisdiction would violate due process, not Sydmark's job to show that it wouldn't.

In order for the Court's exercise of personal jurisdiction over Mobilelink Michigan to satisfy due process, the Court must determine that 1) Mobilelink Michigan purposefully availed itself of the privilege of conducting business in Wisconsin or purposefully directed its activities at Wisconsin; 2) the alleged injury (deprivation of appropriate overtime compensation) arose from or was related to Mobilelink Michigan's forum-related activities; and 3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673 (internal citations omitted).

Relevant to consideration of these factors is the fact that the Seventh Circuit has recently stated that "attributing an agent's suit-related contacts to a principal to establish specific personal jurisdiction poses no due process bar." *Bilek*, 8 F.4th at 591. Discussion of the three factors follows.

### 4.1 Purposeful Availment

The Court concludes that Mobilelink Michigan both purposefully availed itself of the privilege of conducting business in Wisconsin and purposefully directed activities at Wisconsin. The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or third person." *Burger King*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). As discussed previously, the compensation- and overtime-related communications between Sydmark and Jordens were not "random,"

Case 2:21-cv-00504-JPS   Filed 09/22/22   Page 19 of 26   Document 51

"fortuitous," or "attenuated" contacts with Wisconsin. *Burger King*, 471 U.S. at 475. To the contrary, these were regular and anticipated business communications.

The communications between the Mobilelink Michigan stores, including that of Iron Mountain where Sydmark worked as Retail Store Manager, and the Wisconsin Territory Manager, Jordens, were regular, consistent, and deliberate. They occurred on a long-term, routine basis.[2] *See Estimating Grp. LLC v. Rickey Conradt*, No. 19-cv-586-RLY-DLP, 2020 U.S. Dist. LEXIS 202222, at *8 (S.D. Ind. Feb. 18, 2020) ("These communications spanned five years, much too long to be considered 'random' or 'attenuated.'"). They demonstrated "a continued relationship" rather than a "one-off . . . transaction." *Id*. They were not unilaterally initiated by or engaged in by Sydmark alone, nor by Jorden alone. *See Burger King*, 471 U.S. at 474 (unilateral activities of a party having some relationship with an out-of-state defendant are insufficient for purposes of specific personal jurisdiction).

Instead, it was an established practice for Sydmark, as Retail Store Manager of a Mobilelink Michigan retail location, to communicate with Jordens on compensation and overtime issues, and to direct lower employees' inquiries on those topics to Jordens for resolution. "[A]ttributing an agent's actions to a principal which are intertwined with the very controversy at issue is consistent with the purposeful availment requirement underlying the Supreme Court's specific personal jurisdiction

---

[2] Jordens was the Territory Manager for the Wisconsin Territory from November 16, 2018 to September 30, 2021, resulting in an approximately three-year long period during which these communications were regularly directed to her. ECF No. 45 at 1.

precedent." *Bilek*, 8 F.4th at 591 (citing *Burger King*, 471 U.S. at 474). These compensation- and overtime-related communications were made within the scope of Sydmark's job as Retail Store Manager and for the general purpose of operating the store on Mobilelink Michigan's behalf. None of these contacts were accidental or random—instead, these communications were part of a deliberate procedure that went on for at least several years.

### 4.2 Injury Arises Out of or Relates to Defendant's Contacts with the Forum State

The second consideration for purposes of due process compliance is that the injury at issue arose from Mobilelink Michigan's forum-related activities. This factor is also met and supports a finding of personal jurisdiction. The injury at issue here results from an alleged unlawful compensation system that deprived Sydmark and all other hourly-paid, non-exempt employees of their wages earned for all compensable work performed each workweek.

The Court cannot conclude that Sydmark and the other hourly-paid, non-exempt employees would not have been subject to this system, or would not have been deprived of their overtime pay, had Mobilelink Michigan not directed Sydmark and other retail store managers within its stores to correspond on compensation issues with Jordens. Luckily for Sydmark, the Court today need not reach such a conclusion. Such a strict causal connection is not required for due process compliance. *Felland*, 682 F.3d at 676 ("[T]he Supreme Court has not elaborated on the details of this requirement, and the circuits have split on how close the causal connection must be . . . . [W]e have declined to definitively resolve the question.").

As previously discussed, the communications between Mobilelink Michigan's stores and Jordens as Territory Manager regularly related to

issues of overtime and compensation. Sydmark, as Retail Store Manager for a Mobilelink Michigan store, routinely directed that her employees go to Jordens regarding inquiries on such issues. These communications are "not just incidental but are central to the . . . course of conduct alleged in the complaint . . . ." *Id*. at 677.

### 4.3 Traditional Notions of Fair Play and Substantial Justice

Lastly, the Court must conclude that it would not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over Mobilelink Michigan. In analyzing this factor, the Court should consider the following: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477.

Firstly, it is not apparent that there is any meaningful burden on Mobilelink Michigan caused by having to adjudicate this case in Wisconsin. The Mobilelink stores located in Michigan which are within the Wisconsin Territory are included within that territory specifically because of the geographic proximity of the Upper Peninsula to Wisconsin. There is certainly no geographic burden imposed on Mobilelink Michigan by the Court exercising personal jurisdiction over it, nor does there appear to be any other sort of burden. Mobilelink Michigan makes little to no attempt to argue otherwise.

The forum state also has an interest in adjudicating this dispute because, as described previously, Wisconsin has various connections to this case. Mobilelink Michigan asserts that "the State of Wisconsin has no

legitimate interest in a wage dispute between a Michigan employer and its Michigan employees regarding alleged violations of federal and Michigan law." ECF No. 48 at 9. But the Mobilelink hierarchy includes various Michigan stores within the Wisconsin Territory, resulting in their being overseen and controlled by employees working from Wisconsin. Mobilelink Michigan, through its retail store managers and other employees, intentionally takes advantage of its proximity to the Wisconsin border to facilitate its Michigan stores' operations. It therefore cannot be said that Wisconsin has no interest in adjudicating this case in its courts.

Third, the parties have a legitimate interest in obtaining convenient and effective relief. Adjudicating these claims in Wisconsin, where nearly identical claims against Mobilelink Wisconsin are currently being adjudicated, very well may be the best means available to accomplish convenient and effective relief in this circumstance. Sydmark asserts that "litigating these cases separately and in two forums will only serve to duplicate the parties' efforts, increase cost and expense, waste judicial resources, and increase the likelihood of inconsistent rulings." ECF No. 44 at 15. Nothing suggests the contrary.

The fact that such similar facts and law are involved in the accompanying claims brought in this Court against Mobilelink Wisconsin also go to the subsequent considerations: the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. "There is no compelling reason to assume that a single suit in Wisconsin would not be the most efficient means of resolving these claims." *Felland*, 682 at 677. The claims against Mobilelink Michigan and Mobilelink Wisconsin relate to the exact same compensation system which

allegedly unlawfully deprives employees such as Sydmark of appropriate overtime pay. It would therefore seem that adjudication of the claims against both Mobilelink Michigan and Mobilelink Wisconsin may properly be resolved in the same forum.

In sum, it would not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over Mobilelink Michigan in Wisconsin. The email, text, WhatsApp, and phone communications directed to and from Mobilelink Michigan's retail store locations by its employee(s) to Wisconsin were extensive and deliberate enough to give Mobilelink Michigan fair warning that those communications may subject it to personal jurisdiction in Wisconsin on the issues to which those communications relate.

"Jurisdictional rules may not be employed in a manner that puts a defendant at a severe disadvantage, but 'where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477). Mobilelink Michigan has made no such compelling case, not unlike the defendant in *Felland*. *See id.* ("Clifton has not discussed this specific aspect of the jurisdictional analysis in any detail."). Mobilelink Michigan will not be put at a "severe disadvantage" by the Court exercising jurisdiction over it, and Mobilelink Michigan does not even appear to argue otherwise.

The bulk of Mobilelink Michigan's briefing attempts to dispute the existence of minimum contacts in Wisconsin, and neglects to meaningfully discuss any due process implication(s) the Court's exercise of personal jurisdiction over Mobilelink Michigan might have. Once Sydmark made

out her prima facie case of specific jurisdiction, the burden switched to Mobilelink Michigan to show that the Court's exercise of jurisdiction over it would nonetheless violate due process. Mobilelink Michigan has not met this burden.

Mobilelink Michigan has adamantly asserted to the Court that it "has no employees or stores in Wisconsin, directs no advertising there, and does no business there." ECF No. 40 at 7. Further, Mobilelink Michigan states that "[e]ven the injury alleged—failure to pay the correct amount in overtime pay—occurred in Michigan, not Wisconsin, and Plaintiff has pointed to no connection between Mobilelink Michigan's payroll and Wisconsin." *Id*. It is the Court's opinion that these conclusions represent an antiquated and narrow view of personal jurisdiction, not to mention that they are occasionally at odds with the evidence unearthed in discovery.

The ultimate question here is "whether it is fundamentally fair to require [the defendant] to submit to the jurisdiction of the court *with respect to this litigation*." *Purdue Rsch. Found*., 338 F.3d at 780. The Court concludes that it is.

## 5.    CONCLUSION

For the foregoing reasons, the Court denies Mobilelink Michigan's motion to dismiss for lack of personal jurisdiction. ECF No. 26. The Court also denies Sydmark's motion to transfer venue solely as an alternative to dismissal as moot. ECF No. 43.

Accordingly,

**IT IS ORDERED** that Defendant Mobilelink Michigan LLC's motion to dismiss for lack of personal jurisdiction, ECF No. 26, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff Lynsey Sydmark's motion to transfer venue solely as an alternative to dismissal, ECF No. 42, be and the same is hereby **DENIED as moot**.

Dated at Milwaukee, Wisconsin, this 22nd day of September, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge